**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P:(410) 962-4953 — F:(410) 962-2985

December 16, 2025

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE: *Natalie M. v. Frank Bisignano, Social Security Administration*
Civil No. 1:25-cv-0786-JMC

Dear Counsel:

Natalie M. ("Plaintiff") petitioned this Court on March 11, 2025, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (ECF No. 1). The Court has considered the record in this case as well as the parties' dispositive filings. (ECF Nos. 10, 12, 13). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REMAND the case to the SSA for further consideration for the reasons explained below.

**I.   Procedural Background**

Plaintiff filed her Title II application for DIB and Title XVI application for SSI on January 15, 2019 and December 30, 2019 respectively, alleging disability as of November 9, 2018. (Tr. 144-145, 162-171).[1] Plaintiff's claim was denied initially March 22, 2019. *See id.* at 111-16. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") on April 10, 2019. *Id.* at 117-18. ALJ Walter Hellums conducted a telephone hearing on January 13, 2020. *See id.* at 12-32. ALJ Hellums subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. *Id.* The Appeals Council affirmed ALJ Hellums's decision on November 6, 2020. *Id.* at 1-6.

**II.   The ALJ's Decision**

In arriving at the decision to deny Plaintiff's claims, the ALJ (and subsequently the Appeals Council) followed the five-step sequential evaluation of disability set forth in the Secretary's

---

[1] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 7) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ and Appeals Council found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability of November 9, 2018. (Tr. 1771). At step two, the ALJ and Appeals Council determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease (DDD) of the thoracic, cervical, and lumbar spine; fibromyalgia, diabetes mellites (DM) with peripheral neuropathy, obesity, anxiety, depression, posttraumatic stress disorder (PTSD), left carpal tunnel syndrome (CTS), migraines, and thyroid disorder (20 CFR 404.1520(c) and 416.920(c)).

*Id.*

At step three, the ALJ and Appeals Council determined that Plaintiff's impairments or combination of impairments do not meet or equal one of the listed impairments in the regulations. *Id.*; 20 CFR §§ 404(p), Appendix I (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.925, 416.926). In assessing Plaintiff's fibromyalgia, the ALJ opined in pertinent part:

> In reaching this conclusion, the undersigned considered listings 1.15 and 1.16 for thoracic, cervical, and lumbar spine degenerative disc disease (DDD); 1.21 for left carpal tunnel syndrome (CTS), 11.14 for peripheral neuropathy, 12.04 for depression, 12.06 for anxiety, and 12.15 for posttraumatic stress disorder (PTSD). However, no treating or examining physician has indicated finding that would satisfy the severity requirements of any listed impairment.
>
> Although fibromyalgia is not listed as specific impairments, consideration has been given to the Musculoskeletal System listings in section 1.00, the Mental Disorder listing in section 12.00, and SSR 12-2p. Fibromyalgia has been defined under the criteria of the American College of Rheumatology 1990 Criteria for Classification of Fibromyalgia, as including widespread pain in combination with tenderness in at least 11 or more of the 18 specific tender point sites in muscular tissue. Other symptom variables, which can differ, include sleep disturbance, fatigue, morning stiffness, anxiety, irritable bowel syndrome, frequent headaches, Raynaud's phenomenon, SICCA symptoms, prior depression, paresthesia, and "pain all over."

> However, the claimant's impairments do not meet or equal any listing in Section 1.00 or 12.00, as defined in SSR 12-2p.

*Id.* Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, and crouch, but never crawl; and can never work at unprotected heights or near moving mechanical parts. The claimant can have no jobs that require exposure to vibration, frequent use of the left upper extremity (LUE) for handling, fingering, and feeling; occasional use of the bilateral lower extremities (BLE) for use of foot controls, occasional use of right upper extremity (RUE) for reaching overhead. The claimant can have no exposure to very bright lights or very loud noises and is able to perform simple, routine tasks, but cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas. The claimant can have frequent interaction with co-workers, with the public and with supervisors. The claimant is allowed use of cane to ambulate away from the workstation, and the claimant must have a sit/stand option that allows her to sit or stand as needed throughout the day provided that she remain on task while in either position during the work period.

*Id.* at 1775. The ALJ further reasoned,

> Regarding the claimant's fibromyalgia, physical examinations at times note tenderness along trigger points of back, arms, and legs, they also at times revealed no joint tenderness, normal muscle strength and tone, intact sensation, normal deep tendon reflexes, and normal gait (e.g., Ex. 2F/10, 13, 20, 25; 3F/2, 6-7; 4F/2, 7F/4, 12; 8F/3, 14; 10F/18, 27; 14F/4, 15F/29, 19F/14, 20F/4-5, 10, and 22F/2, 7). In addition, due to widespread pain, that was non-responsive to treatment, on November 9, 2023, she ambulated with a cane (e.g., Ex. 37F/62) and physician noted, "She has a difficult pain pattern to gain control over likely due to fibromyalgia (e.g., Ex. 37F/91, 99). However, on June 10, 2024, she was overall stable on her medication regimen for her pain (e.g., Ex. 37F/77), but she continued to have widespread joint pain (e.g., Ex. 53F/1). Nonetheless, the evidence showing occasional reduction in strength, occasional positive straight leg raise testing, occasional gait difficulties, and occasional decrease in sensation (e.g., Ex. 2F/ 2, 10, 13, 20, 25; 3F/2, 5-6; 4F/2, 6; 8F/3, 14, 23-24; 9F/14, 35, 39; 10F/18, 37; 13F/2, 14F/4-5, 17- 18; 15F/17-18, 29-30; 22F/7, 13-14; 25F/13, and 27F/5, 12) is consistent with her reports of ongoing struggles with fibromyalgia including trouble with exertional activities that is accounted for in the residual functional capacity (RFC), herein, limiting her to a range of sedentary work.

*Id.* at 1778. Given this RFC determination, the ALJ concluded at step four that Plaintiff has no

past relevant work. *Id.* at 1784.

Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that Plaintiff could perform the following jobs which existed in significant numbers in the national economy: (1) a bench assembler (DOT #734.687-018), with 12,000 jobs listed nationally; (2) a receptionist/information clerk (DOT #237.367-018), with 20,000 jobs nationally; and (3) a table worker/quality control (DOT #739.687-182), with 5,000 jobs nationally. *Id.* at 1785. Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from November 9, 2018, through the date of the ALJ's decision. *Id.*

### III.    Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

### IV.    Analysis

Plaintiff argues on appeal that the ALJ's decision was not supported by substantial evidence. Specifically, Plaintiff faults the ALJ's and Appeals Council's RFC determination on several grounds: (1) "The ALJ's decision reflects a critical misunderstanding of Plaintiff's severe fibromyalgia and is therefore unsupported by substantial evidence"; and (2) "The ALJ erred by setting forth an inadequate hypothetical to the vocational expert, which infected the RFC and step-five determinations, rendering the decision unsupported by substantial evidence." (ECF No. 17 at 8, 17). For the reasons that follow, the ALJ's and Appeals Council's RFC determination is not supported by substantial evidence. As such, I will remand the case.

   a. <u>The ALJ's and Appeals Council's RFC Determination is Not Supported by Substantial Evidence</u>

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No. CV 23-0947-CDA, 2024 WL 1097192, at *3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. § 416.945(b)–(c)). The ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work" in determining a claimant's RFC. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past

work and other work." *Rodney M.*, 2024 WL 1097192, at *3 (internal citation omitted). As previously explained by the Fourth Circuit, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311). Thus, "A proper RFC analysis proceeds in the following order: (1) evidence, logical explanation, and conclusion." *Id.* at 388 (cleaned up). The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," though, and has explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636; *see also Monroe*, 826 F.3d at 188. A "necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion.") (internal quotation omitted) (emphasis in original).

> i.  The ALJ and Appeals Council Improperly Considered Plaintiff's Fibromyalgia in Determining Plaintiff's RFC

Plaintiff posits the ALJ dismissed Plaintiff's severe fibromyalgia symptoms based on a lack "objective evidence of physiological abnormality reasonably expected to result in the degree of limitation alleged, and the claimant's routine conservative treatment." (ECF No. 10 at 10) (citing Tr. 1776). It is true that the ALJ concluded fibromyalgia is a severe impairment. (Tr. 1771). On this point, Plaintiff avers the ALJ "failed to recognize that fibromyalgia, a chronic, incurable condition, is customarily managed by conservative measures such as medications and dietary changes." (ECF No. 10 at 10). Plaintiff notes,

> The ALJ continued, "Regarding the claimant's fibromyalgia, physical examinations at times note tenderness along trigger points of back, arms, and legs, they also at times revealed no joint tenderness, normal muscle strength and tone, intact sensation, normal deep tendon reflexes, and normal gait" (Tr. 1778) (emphasis added). These statements continue to reflect a fundamental misunderstanding of fibromyalgia.

*Id.* The Commissioner asserts Plaintiff "fail[ed] to acknowledge that, although the ALJ found Plaintiff's allegations regarding the severity and limiting effects of her symptoms in general to be inconsistent with the objective evidence, in discussing her fibromyalgia, the ALJ found that the record was consistent with Plaintiff's "reports of ongoing struggles … including trouble with exertional activities" (ECF No. 12 at 5).

To be sure, "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." *Arakas v. Comm'r,*

*Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020); *Shelley C. v. Comm'r of Soc. Sec. Admin*, 61 F.4th 341, 361-62 (4th Cir. 2023). *Arakas* and *Shelley C.* do not, however, "suggest than an ALJ should ignore objective evidence and fully credit subjective statements." *Hardin v. Dudek*, No. 7:24-cv-377-KS, 2025 WL 602951 at *5 (E.D.N.C. Feb. 25, 2025). Instead, ALJs must not "require[e] claimants to provide medical evidence that would be impossible to produce given their specific medical conditions." *Clifford v. O'Malley*, No. 1:23-cv-704-LPA, 2024 WL 3105669, at *10 (M.D.N.C. June 24, 2024). Moreover, "a claimant's allegations about [his] pain" "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can be reasonably expected to cause the pain the claimant alleges [he] suffers." *Craig v. Chater*, 75 F.3d 585, 595 (4th Cir. 1996). However, the Fourth Circuit has "previously held that ALJs apply an incorrect legal standard by requiring objective evidence of symptoms even when they also consider other evidence in the record." *Arakas*, 983 F.3d at 97 (citing *Hines v. Barnhart*, 453 F.3d 559, 563, 565-66 (4th Cir. 2006)); *see also Lewis v. Berryhill*, 858 F.3d 858, 866, 868 n.3 (4th Cir. 2017). Claimants may not be faulted for pursuing conservative treatments for fibromyalgia because there is no other available treatment for this chronic condition. *See id.* at 102 ("[Plaintiff] cannot be faulted for 'failing to pursue non-conservative treatment options where none exist.'") (quoting *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)).

On December 15, 2025, the Fourth Circuit reversed and remanded *Hultz v. Bisignano*, reiterating that "fibromyalgia is a serious and mysterious condition, disproportionately affecting women, that our current science is incapable of observing through objective medical testing." *Hultz v. Bisignano*, No. 23-2259, slip op. at 2 (4th Cir. 2025).[2] Recognizing that the ALJ's reliance on objective medical evidence to discredit the plaintiff's testimony about her fibromyalgia symptoms was a "clear contravention of *Arakas*," the Fourth Circuit elaborated upon the ALJ's references to the plaintiff's lifestyle. *Id.* at 17-18. Nevertheless, the Fourth Circuit compared the references to those in *Arakas*, reasoning that "the Commissioner in Arakas similarly argued that the ALJ did not err because he considered other evidence such as daily activities—an argument we rejected because the ALJ opinion indicated that the 'lack of objective medical evidence was his chief, if not definitive, reason for discounting Arakas's complaints.'" *Id.* at 18 (citing *Arkas*, 983 F.3d at 97). Moreover, there was not substantial evidence to support the ALJ's opinion in *Hultz*, partially because "[t]he ALJ's opinion offers no explanation for why the lapses in rheumatological treatment and the fact of being temporarily off medication indicate a resolution of symptoms, particularly in the face of contrary testimony from two witnesses and medical records indicating chronic pain for a near decade." *Id.* at 21. To that end, the Fourth Circuit explained, "we must consider the practical cost of seeking treatment—time, money, and physical exertion. Given that there is no treatment for fibromyalgia and painkilling medication may worsen the condition over time, a fibromyalgia patient may reasonably lapse in office visits or choose to forgo them altogether." *Id.* (citing Mayo Clinic, Fibromyalgia Diagnosis & Treatment (Sept. 4, 2020), https://www.mayoclinic.org/diseases-conditions/fibromyalgia/diagnosis-treatment/drc-20354785; https://perma.cc/LQG6-B6WH (last visited, December 16, 2025)). Regarding the plaintiff's daily activities, "the ALJ noted that Ms. Hultz reported the ability to occasionally shop, clean, cook, shop, take care of her children, and socialize with others throughout the years. Ms. Hultz even told her doctors that she went camping in August 2015, and that she was 'very active' with her children, 'doing a lot of walking and climbing,'… and that her pain medications

---

[2] https://www.ca4.uscourts.gov/opinions/232259.P.pdf.

'allow[ed] her to function to continue to take care of her children.'" *Id.* at 21-22. However, the ALJ failed to "explain how these instances of normalcy undermine Ms. Hultz's claim of fibromyalgia pain, which is known to wax and wane." *Id.* at 22. Accordingly, the Fourth Circuit reiterated that "[b]eing able to live independently and participate in the everyday activities of life empowers people with disabilities and promotes their equal dignity." *Id.* (citing *Arakas*, F.3d at 101). Thus, the court held "The ALJ discounted [the plaintiff's and her grandmother's testimony] without adequate explanation. And this Court cannot identify evidence in the record that contradicts Ms. Hultz's testimony about her conditions. Her off-and-on treatment and taking of medications, her occasional ability to engage in daily activity, and even her marked improvement on her other medical issues all remain consistent with debilitating fibromyalgia symptoms." *Id.*

Contrary to the Commissioner's repeated assertions that the ALJ's analysis comported with *Arakas*, this Court is persuaded that the ALJ's references to objective evidence amounted to a discreditation of Plaintiff's subjective symptoms under *Arakas* and *Hultz*. First, the ALJ's reasoning that "the record lacks objective evidence of physiological abnormality reasonably expected to result in the degree of limitation alleged" disregards Plaintiff's testimony about her fibromyalgia pain without explanation. (Tr. 1776). Second, as the ALJ continued, "the claimant's routine conservative treatment and recommendations suggest symptoms not as limiting as alleged." *Id.* As Plaintiff points out, while this may be appropriate reasoning with respect to other conditions, the ALJ's failure to explain how such evidence undermines Plaintiff's fibromyalgia symptoms is improper under *Arakas* and *Hultz*. *Hultz*, No. 23-2259, slip op. at 21-22 (explaining that fibromyalgia symptoms are known to wax and wane and that conservative treatments or even an "active lifestyle" are an improper basis upon which to discredit a plaintiff's fibromyalgia symptoms). Indeed, the ALJ's reasoning penalizes Plaintiff's inconstant reports of pain without consideration for how fibromyalgia is known to wax and wane. *Id.* at 22. Moreover, the ALJ's reasoning that, "Regarding the claimant's fibromyalgia, physical examinations at times note tenderness along trigger points of back, arms, and legs, they also at times revealed no joint tenderness, normal muscle strength and tone, intact sensation, normal deep tendon reflexes, and normal gait" (Tr. 1778) also demonstrates a contravention of *Arakas*. *Arakas*, 973 F.3d at 97. Indeed, by offsetting Plaintiff's testimony with references to a lack of objective medical evidence shows that the ALJ discredited her symptoms in violation of *Arakas*. *Id.* While the Commissioner is correct that the ALJ credited Plaintiff's fibromyalgia in certain instances, doing so does not mean the ALJ comported with *Arakas* when the ALJ also used objective medical evidence to discredit Plaintiff in several other instances. *See id.* In the Court's view, this reasoning does discredit Plaintiff's allegations of her pain based on objective medical evidence as at least one of multiple factors. *Hultz*, No. 23-2259, slip op. at 21-22; *Arakas*, 973 F.3d at 97. Therefore, the Court finds Plaintiff's first argument persuasive and concludes that the ALJ's decision, adopted by the Appeals Council, improperly considered Plaintiff's fibromyalgia in determining Plaintiff's RFC. Thus, I remand the case for further proceedings.

V.    **Conclusion**

In sum, the Court agrees with Plaintiff that the ALJ and subsequently the Appeals Council improperly considered Plaintiff's fibromyalgia. In other words, the ALJ's and Appeals Council's RFC determination for Plaintiff is not supported by substantial evidence for the reasons explained above. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due

to improperly discrediting Plaintiff's fibromyalgia in contravention of *Arakas*, and the decision of the SSA is REMANDED for further proceedings in accordance with this Letter Order and Opinion. In so holding, the Court expresses no opinion as to the validity of the ALJ's and Appeals Council's ultimate disability determination. The Clerk of the Court is accordingly asked to CLOSE this case.

  Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

            Sincerely yours,

            _____/s/_____

            J. Mark Coulson
            United States Magistrate Judge